James **HANCOCK**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. 7818.

Court of Appeals of Alaska.

Sept. 27, 1985.

---

Salvatore Iacopelli, Coleman & Iacopelli, Fairbanks, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

James Hancock was convicted of four counts of sexual assault in the first degree. Former AS 11.41.410(a)(1).[1] Hancock's victim was T.T., the daughter of a woman, L.B., with whom Hancock had lived for a number of years. The assaults occurred between December 1981 and May 1982. At the time of Hancock's conviction, first-degree sexual assault was a class A felony. Former AS 11.41.410(b). The maximum penalty was twenty years' imprisonment. Former AS 12.55.125(c)(1). Hancock received four maximum consecutive twenty-year sentences, constituting a composite sentence of eighty years imprisonment. Hancock appeals his conviction and the resulting sentence. We affirm Hancock's conviction. We find the record inadequate to resolve the sentencing issue. We therefore remand the case for resentencing. We separately set out the facts as they pertain to each issue decided.

## I.

■ Hancock raises a single issue regarding his conviction. He contends that the trial court erred in failing to grant a mistrial. Hancock reasons that the trial court granted a pretrial protective order precluding the state from offering evidence that Hancock had sexually abused T.T.'s younger sisters, and that witnesses for the state violated this protective order by dis-

---

**1.** Former AS 11.41.410(a)(1) provided:

A person commits the crime of sexual assault in the first degree if, (1) being any age, he engages in sexual penetration with another person without consent of that person.

Former Alaska Statute 11.41.470 provided in part:

(3) "without consent" means that a person (A) with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone; or (B) is incapacitated as a result of an act of the defendant.

closing to the jury prior sexual molestation of T.T.'s siblings.

Prior to trial, the state had sought permission from the court to admit testimony that the defendant had sexually abused T.T.'s younger sisters and a stepdaughter by a prior marriage. The state relied on *Burke v. State*, 624 P.2d 1240, 1246–51 (Alaska 1980). The state reasoned that the testimony was necessary to create a context in order to corroborate T.T.'s testimony and to explain her failure to seek aid at an earlier time. The state was particularly interested in the testimony of the stepdaughter which tended to corroborate testimony of Micheal Bowlin regarding Hancock's having had a sexual relationship with the stepdaughter. Bowlin, who had been one of Hancock's cell mates while Hancock was held in pretrial detention, was also expected to testify to alleged admissions by Hancock regarding sexual abuse of T.T.

The state correctly anticipated that the defense would attack Bowlin's credibility by showing that he had testified against others under similar circumstances in the hope of getting his own sentence reduced. The state anticipated that the defense would bolster its attack on Bowlin by attempting to show that he customarily searched through other prisoners' private papers in the hopes of gaining information which he could use to establish his own credibility in testifying against them. This line of defense in fact occurred.

Superior Court Judge Warren W. Taylor denied the state's request to use the corroborative testimony of Hancock's stepdaughter. The court did, however, permit what was expressly allowed in *Burke, i.e.*, T.T. was allowed to testify about prior uncharged incidents in which she was the victim. Judge Taylor also ruled that the state could not offer evidence that Hancock had sexually abused T.T.'s sisters or his stepdaughter.

At the same hearing, the state sought permission to offer the testimony of certain social workers and mental health care professionals regarding what the defense termed "rape-trauma syndrome." The state expected that the social workers would testify that victims of sexual abuse act in certain ways, thereby manifesting that they had been sexually abused. The state would then introduce testimony that T.T. and, if permitted, her sisters acted in this way, thus corroborating the contention that they had been sexually abused. Judge Taylor ruled that the social workers could testify as to their personal observations from their treatment of T.T., but not about the other children. He specifically ruled that any testimony about the alleged syndrome would not be permitted without a hearing outside the jury's presence.

Four social workers testified: Alice Bailey, a counselor-advocate at Women In Crisis Counseling Assistance (WICCA) in Fairbanks; Gloria Wingenbach, a social worker with the Division of Family and Youth Services; Beverly Schwartz, a mental health technician at Fairbanks Community Mental Health Center; and Karl Brimner, a supervisory caseworker for the Division of Family and Youth Services.

In addition, T.T., L.B., and an investigator for the Alaska State Troopers testified. Without objection from the defendant, these witnesses testified that L.B. and all five of her children sought sanctuary in the WICCA shelter in January and May, 1982 as a result of physical abuse by Hancock, that at sometime during the family's stay at the WICCA in May, T.T. told a social worker that Hancock had sexually abused her, and that as a result of T.T.'s charges, all of the children were interviewed as well as L.B. L.B. also was questioned extensively about the fact that all of her children previously had been taken into custody in Florida and that she had taken the children without the approval of the Florida authorities to Kentucky and later to Alaska in the company of Hancock. The jury was not told that alleged sexual abuse by Hancock prompted the Florida authorities to take the children into custody. The jury was told that L.B.'s problems with the Florida authorities led the Fairbanks social work-

ers to seize all of the children and place them in foster care.

It was in this context that the various social workers testified and gave the statements which Hancock now contends prejudiced him before the jury.[2] No social worker specifically testified that Hancock abused anyone other than T.T. or that anyone told them that Hancock had sexually abused any other child. The statements challenged by Hancock intimate that L.B.'s other children were being counseled for sexual abuse which Hancock contends supports two adverse inferences: (1) that the other children had been sexually abused, and (2) that Hancock was the abuser.

Judge Taylor ruled in Hancock's favor every time he objected. At trial, Hancock did not object to any testimony by Alice Bailey,[3] or Gloria Wingenbach[4] either while they were testifying or out of the jury's presence after they completed testifying. Nor did he make any contemporaneous objection to any testimony by Beverly Schwartz.[5] After Karl Brimner had completed his direct testimony, defense counsel did request a hearing out of the presence of the jury, and made an objection. Counsel for Hancock requested that the state's expert witnesses be further admonished not to disclose the fact that some of the other children [allegedly] also had been victims of sexual abuse. Judge Taylor ruled in Hancock's favor and instructed the state to admonish Mr. Brimner again in limiting his testimony to observations about T.T.[6]

2. See infra nn. 3-6.

3. On appeal, Hancock challenges the following questions and answers by Alice Bailey:

Q. [Prosecutor] Did [T.T.] come and discuss with you a problem that she had?
A. [Alice Bailey] Yes, she did.
Q. Who, if anybody, did that problem relate to?
A. Jim Hancock and herself and her sisters.
Q. And what did you do, after discussing that problem with [T.T.]?
A. I made a report to—to the D.A.'s office, and to the Alaska Troopers.

4. On appeal, Hancock challenges the following questions and answers by Gloria Wingenbach:

Q. [Prosecutor] In connection with your employment, did you have contact with the family in the month of May or June—by the name of Hancock or [T.]?
A. [Gloria Wingenbach] Yes, I did.
Q. And how did that come to your attention—from what source did you receive information about that family?
A. Well, I received a call from Alice Bailey, a counselor at WICCA.
Q. What did you do, in response to her call?
A. In response to her call, we set up a joint interview with yourself, [investigating state trooper] John Addis, Alice Bailey, and myself, with the girls involved.

5. On appeal, Hancock challenges the following questions and answers by Beverly Schwartz:

Q. [Prosecutor] On an ongoing basis, which, if any, of the members of the family did you continue to see after an initial evaluation?
A. [Beverly Schwartz] I'd say that I met several times with [T.T.] and her sisters—that, was in June, July, August, and September for a total of three or four sessions. [The siblings] were also seen in a group in which I was group leader for. And this was a group for preadolescent victims of sexual abuse ...
Q. Have you—were you able—strike that. When's the [last] [sic] time that you saw [T.T.] in a counseling setting?
A. Okay. I saw her last Friday. Was that the 14th, I believe?
Q. Okay.
A. She was seen with her two sisters at that time.
Q. [Has] she [i.e., T.T.] made any progress in being able to discuss the subject?
A. No.
Q. Does she still demonstrate a lot of emotion in her sessions with her, or has that changed—in terms of crying or other ...?
A. She demonstrates emotion when the subject matter is brought up either by me or one of her sisters.
Q. Now, the other two girls [i.e., T.T.'s siblings]—you've also had contact with them in a counseling setting?
A. Yes.

6. On appeal, Hancock objects to the following questions and answers by Brimner during Brimner's direct examination.

Q. [Prosecutor] In terms of the message that you've given to [T.T.], do I understand your testimony that that's not been a condition—in other words, of her....
A. [Brimner] That's correct. Right.
Q. ... testifying, how she testified—that would influence what would happen later?
A. That's correct.
Q. On her placement?
A. It's—it's, I think—not only myself, but other people that [T.T.] has been involved within the system—therapists and that—that the message has been that we're working with the children and the mother at this time....

Brimner was then cross-examined by defense counsel and responded to the following questions:

Q. [Defense counsel]  Even though he [*i.e.*, Mr. Hancock] was acquitted, he would be in therapy?

A. Certainly.  In sexual abuse cases . . .

Q. But . . .

A. I have not seen where the children have lied about the circumstances. Children don't lie about sexual abuse.  And I have no reason to believe that they're lying in this situation.  I believe that what happened to them in fact did happen to them.

Hancock never moved to strike Brimner's answer as nonresponsive.  Thereafter he sought a mistrial.

After carefully reviewing the record, we are satisfied that Judge Taylor did not abuse his discretion in denying Hancock's motion for mistrial.  *See, e.g., Walker v. State*, 652 P.2d 88, 92 (Alaska 1982), *citing*

> Q. What about the children?  I take it that you've been in the position to make observations about their behavior and reactions and things like that?
> A. Right.  Initially, the children were very—at one—when we got involved, and involved, also, at the time—well, let me back up.  At the time that I got involved was when the grand jury testimony was being provided by the children.
> Q. Let's just start with [T.T.].  How has [T.T.] reacted, that you've been able to observe, toward her having to come to court, testify in court, be part of the criminal justice system because of the disclosure that she made?
> A. It's—it's been very difficult for her. Their—the trial was originally scheduled for the middle part of September, and we tried to prepare the children for it in terms of what to expect, and to—to realize the fact that it is a difficult process to go through, and try [sic] to give them as much support as we could at that time.  The—their reactions the week before the—I think it was September 15th date—was a lot of—again, a lot of anger, indicating some insecurities in terms of what was happening in their lives at this point in time.  In some ways, indicating that they didn't feel comfortable doing it and—and—and—wondering whether or not there was some way around it. I suggest—I indicated to them that certainly no one could force them to testify, and they

*Amidon v. State*, 565 P.2d 1248, 1261 (Alaska 1977).

In two leading Alaska Supreme Court cases, the court refused to find an abuse of discretion under similar circumstances.  In *Fields v. State*, 629 P.2d 46, 48–52 (Alaska 1981), Fields was charged with a series of security frauds, and the defendant obtained a pretrial protective order prohibiting the introduction of evidence of pending bad check charges.  Nevertheless, in the course of the trial, a Fairbanks police officer alluded to the pending check charges.  The trial court denied the motion for mistrial in part because he thought the evidence was relevant to the charges of security fraud.  On appeal, the supreme court concluded that any relevance was outweighed by potential prejudice.  The court, nevertheless, found that given the strength of the state's case, "[t]his truncated portion of inadmissible testimony . . . [is] relatively minuscule in impact.  Accordingly, in this context we conclude the error was harmless."  629 P.2d at 51.[7]

> didn't need to do that.  But—we talked about what that would mean and we talked about the fact that what their feelings were toward Mr. Hancock at that time, also, and what had happened.  We, again, went through that whole process a second time, with this trial, which has been real difficult for the children. And it's also drawn it out longer than any other case that I've been involved . . .
> Q. Would you say that the children have made any progress in terms of being able to deal with these things while they've been in foster care?
> A. I think the children have made some progress with some of their feelings around the issue of sexual abuse.  There continues to be resistance in dealing with the problem itself at this point.  When I look at the children, I think probably [T.T.] has made more progress than the others at this point in time. But it's been minimal, I believe.

7. In *Fields*, the court also made the following comment regarding the deference to be accorded the trial court's decision about the grant or denial of a motion for mistrial under these circumstances:

> We wish to caution, as we have in the past, that the prosecution should take great care to inform its witnesses not to refer to other unrelated crimes the defendant may have committed, especially where, as here, a pro-

In *Preston v. State*, 615 P.2d 594 (Alaska 1980), the defendant was tried for burglary in a dwelling. She obtained a pretrial protective order barring the prosecution from introducing evidence of Preston's recent conviction for receiving stolen property and her resultant probationary status. 615 P.2d at 603. During the direct examination of an accomplice, the following exchange occurred:

Q. What day was that that you took it [the stolen property] out in the woods?

A. A few days after. Well, whatever day it was that her [Preston's] probationary officer came out.

*Id.* The trial court denied Preston's motion for mistrial. The supreme court affirmed:

We find no error in this denial. The trial judge is granted discretion in admitting or rejecting evidence of a defendant's prior convictions for a proper purpose. The purpose of the protective order was to preclude the jury from improperly considering evidence of Preston's prior conviction for an unrelated offense as bearing upon her guilt in the present case. Although revealing substantive evidence of appellant's conviction as proof of her criminal disposition would clearly violate Alaska Rule of Evidence 404(b), we cannot say that the simple reference at trial of Preston's proba-

tion was a substantial violation of the protective order.

615 P.2d at 603–04 (footnote omitted).

We reach the same conclusion here. Hancock's theory of defense conceded substantial physical abuse of L.B. and her children. Substantial evidence established that L.B. and her children were receiving counseling in part as a result of this physical abuse. In fact, Hancock argued that it was fear of future physical abuse and a desire to prevent reconciliation that led T.T. to falsely accuse him of sexually abusing her. Under these circumstances, it is not likely that passing reference to the children being in counseling would have affected the verdict. We therefore conclude that any error was harmless. *Fields*, 629 P.2d at 51.

## II.

■ Hancock was convicted of four counts of sexual assault in the first degree, a class A felony. Former AS 11.41.-410(a)(1) and (b). Each count carried a maximum sentence of twenty years and presumptive sentences of, respectively, six years for a first offender who possessed or used a firearm or caused serious physical injury during the commission of the offense; ten years for a second felony conviction; and fifteen years for a third felony conviction. Former AS 12.55.125(c). Hancock received four consecutive maximum twenty-year sentences for a composite sentence of eighty years.[8]

---

tective order has been issued against mention of another criminal charge. Where such evidence does inadvertently come before the jury, the trial court's determination upon a motion for mistrial will be given deference on review. While it might have been better for the court here to have given a cautionary instruction to the jury concerning the questioned portion of Detective Curwen's testimony, it is not important in the context of this case, in view of our holding that the error in allowing that testimony to remain in evidence was harmless.

*Fields v. State*, 629 P.2d at 46, 51–52 (Alaska 1981) (footnote omitted).

**8.** Hancock's offenses preceded amendments to AS 11.41 and AS 12.55 which made first-degree sexual assault an unclassified felony and provid-

ed, *inter alia*, for an eight-year presumptive sentence for a first offender. Hancock's crimes also preceded amendments to AS 12.55.025(e) and (g) which could be interpreted to make consecutive presumptive sentences mandatory. During her sentencing arguments the prosecutor argued that a thirty-two year sentence comprised of four eight-year consecutive sentences was the minimum that Hancock could receive under current law. In his sentencing remarks, Judge Taylor seemed to accept the premise that the current law requires that, under certain circumstances, a person convicted of sexual abuse must be given consecutive presumptive sentences. We have rejected this interpretation of the amended statutes in our recent decision in *State v. Andrews*, —— P.2d ——, Op. No. 510 (Alaska App., September 6, 1985).

Hancock challenges his sentence on three related grounds. First, he contends that the trial court inadequately considered the sentencing guidelines established in *State v. Chaney*, 477 P.2d 441 (Alaska 1970),[9] and incorporated into AS 12.55.005.[10]

**9.** As set out in *Chaney*, those guidelines are:
  (1) Rehabilitation of the defendant;
  (2) isolation of the defendant to protect society;
  (3) deterrence of the defendant as well as others from similar conduct, and;
  (4) reaffirmation of societal norms.
477 P.2d at 444.

**10.** Alaska Statute 12.55.005 provides:
  The purpose of this chapter is to provide the means for determining the appropriate sentence to be imposed upon conviction of an offense. The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter. In imposing sentence, the court shall consider
    (1) the seriousness of the defendant's present offense in relation to other offenses;
    (2) the prior criminal history of the defendant and the likelihood of rehabilitation;
    (3) the need to confine the defendant to prevent further harm to the public;
    (4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;
    (5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct; and
    (6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms.
  In its commentary to this section the legislature said:
  This section declares the legislative purpose of the revisions to AS 12.55: the elimination of unjustified disparity in sentences imposed on defendants convicted of similar offenses committed under similar circumstances—disparity which is not related to legally relevant sentencing criteria. (*See generally* "Alaska Felony Sentencing Patterns: A Multivariate Statistical Analysis (1974–1976)," The Alaska Judicial Council, April 1977, and Cutler, "Sentencing in Alaska: A Description of the Process and Summary of Statistical Data for 1973," The Alaska Judicial Council, March 1975).
  Factors to be considered by a court in imposing sentence are set out in paragraphs (1)–(6). Paragraph (1) requires the court to consider the seriousness of the offense as compared with other offenses; this consideration reflects the "just deserts" theory of punishment, which holds that justice requires that a sentence imposed on a defendant should be based on the crime he committed rather than on speculation as to his future behavior. The considerations in paragraph (2)–(6) are largely a restatement of the Alaska Supreme Court's interpretation of the mandate of Article I, Section 12 of the Alaska Constitution which provides that "Penal administration shall be based on the principle of reformation and upon the need for protecting the public." *State v. Chaney*, 477 P.2d 441 (Alaska 1970).
  Each of the considerations set out in paragraphs (1)–(6) is to be considered by the court before imposing sentence. The factors are not listed in order of importance. In sentencing repeat felons, however, paragraph (1) will be of primary importance, because the presumptive sentencing provisions of §§ 12.55.-125–12.55.175 provide that the presumptive sentence for repeat felons is some term of imprisonment absent a finding by the court that factors in mitigation or extraordinary circumstances exist.
Commentary on the Alaska Revised Criminal Code, Senate Journal Supplement No. 47 at 148–49, 1978 Senate Journal 1399.
  Another important source of sentencing guidelines is AS 12.55.015(b), which provides:
  The court, in exercising sentencing discretion as provided in this chapter, shall impose a sentence involving imprisonment when
    (1) the defendant deserves to be imprisoned, considering the seriousness of the present offense and the defendant's prior criminal history, and imprisonment is equitable considering sentences imposed for other offenses and other defendants under similar circumstances;
    (2) imprisonment is necessary to protect the public from further harm by the defendant; or
    (3) sentences of lesser severity have been repeatedly imposed for substantially similar offenses in the past and have proven ineffective in deterring the defendant from further criminal conduct.
  In discussing amendments to this provision in 1980, the legislative committee said:
  Alaska Statute 12.55.015(b) lists three circumstances when a judge is required to impose imprisonment in situations where a nonincarcerative alternative is not otherwise precluded. Because the presumptive sentencing scheme will usually require the imposition of some period of imprisonment for repeat felons, absent mitigating factors or extraordinary circumstances, this section is of particular importance in the sentencing of misdemeanants and first time felons.
  The amendment [which emphasizes repeated prior sentences of lesser severity]

Second, Hancock contends that the trial court did not comply with AS 12.55.155(f) in sentencing him.[11] In particular, Hancock argues that the trial court failed to hold the state to the "clear and convincing" evidentiary standard in establishing aggravating factors and that the trial court failed to set forth all of its findings with specificity.

Third, Hancock argues that the trial court failed to give adequate consideration to the *Austin* rule that a first offender should receive a substantially more favorable sentence than the presumptive sentence for a second offender committing the same offense in the absence of aggravating factors or extraordinary circumstances. *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981). While Hancock concedes that the trial court found a number of aggravating factors under AS 12.55.155(c), he contends that the trial court's imposition of four consecutive twenty-year sentences cannot stand in light of this court's holding in *Lacquement v. State*, 644 P.2d 856 (Alaska App.1982). In *Lacquement*, this court held that where the trial court imposes consecutive presumptive sentences, the aggregate of which exceeds the presumptive term for a single count of which defendant was convicted, the trial court must find that the aggregate sentence is necessary for the protection of the public. *Id.* at 860–62. Thus, Hancock contends that the trial court in this case erred by failing to find that the eighty-year sentence with no time suspended was necessary for the protection of the public.

■ The supreme court has been careful not to require a full discussion of the *Cha-*

*ney* criteria in every case in which they would be applicable. However, we believe that where, as in this case, the trial court accepts the state's position that that defendant's conduct is so heinous and that he is so beyond the possibility of rehabilitation that his conduct warrants the imposition of an effective life sentence, the trial court must carefully analyze the evidence and clearly indicate the basis for imposing the sentence.

We have no doubt that the trial judge was fully informed of the record in this case. He presided at a jury trial, heard the witnesses testify on direct and cross-examination, and reviewed the exhibits. In addition, an extensive sentencing hearing was held at which witnesses were called to supplement their trial testimony and were cross-examined. Nevertheless, in order to ensure that the defendant and others will adequately understand the sentence imposed, the trial court must expressly relate the sentencing criteria to the specific facts of the case before it. If the *Chaney* criteria are not discussed in connection with the evidence in the case, there is a real danger that they will become a litany to be chanted rather than a series of guidelines to be followed in properly explaining a sentence. The trial court in the instant case did not relate the *Chaney* criteria to the specific facts of the case. We therefore vacate Hancock's sentence and remand for (1) findings of fact explaining the aggravating factors found in light of the evidence and (2) conclusions of law applying the *Chaney* criteria to those findings.

---

changes paragraph (3) to more narrowly define the circumstances when imprisonment is required. The amendment addresses the specific concerns expressed by the Advisory Committee on Minority Judicial Sentencing Practices and eliminates the possibility that imprisonment will be required whenever a court on a single occasion in the past has imposed a sentence of lesser severity on the defendant. The amendment additionally conforms this provision to the underlying legislative intent that accompanied enactment of presumptive sentencing.
Commentary and Sectional Analysis for the 1980 Amendments to Alaska's Revised Criminal

Code, Senate Journal Supp. No. 44 at 23, 1980 Senate Journal 1418.

11. Alaska Statute 12.55.155(f) provides:
If the state seeks to establish a factor in aggravation at sentencing or if the defendant seeks to establish a factor in mitigation at sentencing, written notice must be served on the opposing party and filed with the court not later than ten days before the date set for imposition of sentence. Factors in aggravation and factors in mitigation must be established by clear and convincing evidence before the court sitting without a jury. All findings must be set out with specificity.

On remand the trial court should determine the priority and relationship of the *Chaney* criteria in light of its factual findings. *See Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970). The trial court also should look to *State v. Andrews*, 707 P.2d 900 (Alaska App.1985) for guidance in sentencing. In *Andrews*, we undertook an extensive review of sentences for first-degree sexual assault, and, in partial reliance on *Atkinson v. State*, 699 P.2d 881 (Alaska App.1985), we recognized a sentence of ten to fifteen years as a proper benchmark for aggravated cases of sexual assault. In reaching this conclusion, we recognized that the number of counts for which the defendant was convicted was a relevant factor in assessing the overall sentence but should not receive undue weight. We reasoned that those convicted of a single incident or a series of incidents on a single occurrence of sexual abuse of a minor involving the most serious conduct—sexual penetration—will generally be sentenced in the lower range of sentence approximating the current presumptive term of eight years. Generally, a sentence in excess of the presumptive term requires aggravated conduct and will involve multiple incidents or multiple victims. We also reasoned that such crimes usually involved a course of conduct over a protracted period. Consequently, it would be unreasonable to give undue weight to multiple charges which might reflect no more than a given prosecutor's charging idiosyncrasies. We were also concerned that giving substantial weight to the prosecutor's charging decision might create undue pressure on innocent defendants to plead to a single charge. Finally, we concluded that the trial court's decision to give consecutive rather than concurrent sentences should not in and of itself justify disparate sentences. Where a defendant is sentenced on four counts of first-degree sexual assault he may receive an incrementally more severe sentence than if he was sentenced for only one, but he should not receive four times as severe a sentence.

Hancock presents a particularly difficult case. At the time he was sentenced, Hancock was thirty-five years old. Hancock is a high school graduate and has college credits in engineering and mathematics. Prior to his arrest, Hancock had been employed for between one and two years as a service manager for a company which manufactures water pumps. Hancock has a criminal record consisting of a number of property offenses committed between 1967 and 1971, for which he apparently served some time in prison, and two offenses involving violence against others committed in 1977. Hancock has no record from 1977 until the conviction which is the subject of this appeal.

Hancock lived with L.B. and her five children for a period of about five years before his arrest. The sentencing record establishes a continuous course of sexual abuse of T.T. and some evidence of sexual abuse of her siblings. In addition, Hancock has been violent with all of the children and their mother. Hancock denies that he sexually assaulted T.T. and exhibits little remorse. Most disturbing is the evidence that he penetrated T.T.'s vagina with an object which became implanted requiring surgery for its removal. This episode caused T.T. serious physical injury and psychological damage. *See Wikstrom v. State*, 603 P.2d 908 (Alaska 1979) (court approved three concurrent fifteen year sentences for rape of eighteen-year-old hitchhiker who was forced to submit to vaginal and anal intercourse, to commit fellatio and had a metal object forced into her vagina). We are not prepared to say that the trial court would be erroneous if it found, based on all of the evidence, that Hancock's conduct was more serious than Koenig's,[12] Atkinson's, Seymore's or Qualle's. *See Sey-*

---

12. *Koenig v. State* was consolidated on appeal with *State v. Andrews*, 707 P.2d 900 (Alaska App.1985). Koenig, a grammar school teacher, pled no contest to multiple charges of sexual assault on his female pupils. He received a composite sentence of forty years with twenty years suspended. We remanded with instructions that the sentence to be imposed should not exceed twenty years with five years suspended.

*more v. State,* 655 P.2d 786 (Alaska App. 1982) (twenty-year sentence approved where defendant engaged in sexual penetration with his stepdaughter. Defendant had been previously convicted of the same offense with the same victim). *Qualle v. State,* 652 P.2d 481 (Alaska App.1982) (fifty-one-year-old defendant had extensive history of child sexual abuse with commercial overtones. A prior prosecution was dismissed when the prosecuting witness, his daughter, disappeared. Held: forty-year composite sentence reduced to twenty-one years.) Such a finding might be warranted if the court found that substantial violence commonly accompanied Hancock's acts of sexual abuse and that Hancock had previously spent a substantial period of time in prison without being deterred or rehabilitated. However, a sentence in excess of the ten- to fifteen-year benchmark should not be imposed in the absence of an updated psychological or psychiatric evaluation, unless Hancock refuses to be evaluated.

Our decision that the sentence in this case must be vacated and the case remanded for resentencing makes it unnecessary to consider Hancock's claim of excessiveness at this time. Nevertheless, in resentencing Hancock the trial court should recognize that we have only approved total sentences of forty years or more for persons convicted of multiple crimes warranting consecutive sentences who also have a felony record for crimes of violence. *Wortham v. State,* 689 P.2d 1133, 1143–45 (Alaska App.1984) (five prior felony convictions); *Larson v. State,* 688 P.2d 592 (Alaska App. 1984) (two prior felony convictions); but *cf. Nix v. State,* 653 P.2d 1093, 1101 (Alaska App.1982) (extensive felony record for nonviolent crimes but present conviction involved premeditated violent sexual assaults against three separate victims). Hancock would not seem to fit within this category of offenders. In fact, he would not seem

to fall within the class of offenders for which we have approved total consecutive sentences of thirty years. *See, e.g., Tookak v. State,* 648 P.2d 1018, 1023–24 (Alaska App.1982) (defendant convicted of rape and kidnapping had a felony record for nonviolent crimes and misdemeanor convictions for assault-related offenses). If the total sentence on remand exceeds thirty years, the trial court should clearly indicate why it views Hancock's case as more serious than *Wortham, Larson, Nix,* and *Tookak,* in light of the seriousness of their respective conduct and their respective past proven criminal records. AS 12.55.005.

The judgment of the superior court is AFFIRMED.

The sentence of the superior court is VACATED and this case is REMANDED for resentencing.[13]

---

**13.** On remand Judge Taylor may, of course, consider Hancock's lack of remorse if established in the record. We recognize that a defendant who intends to appeal his conviction may feel inhibited in freely acknowledging guilt. Now that Hancock's merit appeal has been resolved he may feel more willing to discuss his responsibility. *Spencer v. State,* 642 P.2d 1371, 1377 n. 5 (Alaska App.1982).