STATE of Alaska, Appellant,

v.

Lige AMBROSE, Appellee.

No. A–2069.

Court of Appeals of Alaska.

Aug. 5, 1988.

Michael J. Stark, Asst. Atty. Gen., Crim. Div. Central Office, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

In this appeal, the state challenges an order of the superior court releasing Lige Ambrose, a sentenced prisoner, for a period of four days to attend a ceremonial potlatch. The appeal requires us to determine the scope of the superior court's authority under Alaska Criminal Rule 35(b), which allows the court to modify a sentence in light of changed circumstances. We conclude that the superior court lacked authority to order Ambrose's release.

Lige Ambrose was convicted of assault in the third degree. On November 7, 1986, Acting Superior Court Judge Christopher E. Zimmerman sentenced Ambrose to a term of three years with one year suspended.[1] On May 28, 1987, Ambrose filed a motion for modification of his sentence pursuant to Criminal Rule 35(b). The motion requested the court to order Ambrose's release from confinement for four days, stating:

> [A] funeral potlatch for Mr. Ambrose's late brother and sister will be held from June 4 through June 8, 1987, in Hughes. Given the religious and cultural significance of this event, Mr. Ambrose very much wants to be present. He asks this court to modify his sentence pursuant to Alaska R.Crim.P. 35(b) so as to allow him to attend.

---

1. The court subsequently reduced Ambrose's sentence to a term of three years with two and one-half years suspended. This reduction is not relevant to the issues presented on appeal.

Following an expedited hearing, Judge Zimmerman, over the state's objection, granted Ambrose's motion. The state appeals, claiming that the court had no jurisdiction under Criminal Rule 35(b) to order Ambrose's release.[2]

Alaska Criminal Rule 35(b) provides in part:

*Modification or Reduction of Sentence—Changed Conditions or Circumstances.* The court may modify or reduce a sentence at any time during a term of imprisonment if it finds that conditions or circumstances have changed since the original sentencing hearing such that the purposes of the original sentence are not being fulfilled.

(1) The sentencing court is not required to entertain a second or successive motion for similar relief brought under this paragraph on behalf of the same petitioner.

(2) No sentence may be reduced or modified so as to result in a term of imprisonment which is less than the minimum required by law.

■ In challenging the court's authority to order Ambrose's release under this rule, the state advances two primary arguments, neither of which is persuasive. First, the state points out that the rule applies to changes in circumstances or conditions arising after the original sentence is imposed. The state reasons that, because Ambrose's brother and sister died before the original sentencing hearing, Ambrose's need to attend a potlatch in their honor does not qualify as a changed condition or circumstance occurring after his sentencing. This argument is without merit, since the event that constituted a changed condition and gave rise to Ambrose's request for modification was plainly the scheduling of a funeral potlatch, not the death of his brother and sister. As a circumstance that

arose after Ambrose's sentence was imposed, the scheduling of the funeral potlatch at least theoretically qualifies for consideration under Rule 35(b).

■ Second, the state urges us to hold that Rule 35(b) applies only to unanticipated changes in circumstances or conditions relating to a prisoner's classification by the Department of Correction following the imposition of sentence. The state cites the legislative commentary to ch. 166, § 12, SLA 1978—the legislative provision amending the current form of Rule 35(b). The commentary states, in relevant part:

The thrust of this amendment [to Criminal Rule 35(b)] is to provide for correction of demonstrable inequities resulting from breakdowns in the process of classifying prisoners.

Presently, after a defendant is sentenced to imprisonment he is classified by a committee within the [Department] of Corrections for placement, treatment, work and educational releases. If the sentencing court determines that the defendant needs alcohol rehabilitation treatment and sentences the person with that in mind, the classification committee may inadvertently subvert that purpose by it's [sic] decision for placement or manner of treatment. Current rules allow for a motion to modify sentence in such circumstances for only a limited period after the sentencing hearing. This amendment would grant such jurisdiction to the court at any time during a term of imprisonment if it finds that the change in circumstances or conditions results in subverting the intent of the original sentence.

This amendment makes it clear that this section cannot be used to result in a term of imprisonment which may be less than that required by the presumptive

---

**2.** This court subsequently denied an emergency motion by the state for a stay of the superior court's order pending appeal. Although we recognized that the denial of the stay would technically render an appeal moot, we expressly provided that our denial was without prejudice to the state's right to argue for an exception to the mootness doctrine. On appeal, the state argues that this case falls within an exception to the

mootness doctrine, and Ambrose does not dispute the state's contention. Because we conclude that this case presents an important question of public interest that is capable of repetition and might repeatedly circumvent review, we have decided to address the issue raised on appeal despite its technical mootness. *See Hayes v. Charney,* 693 P.2d 831, 834 (Alaska 1985).

sentencing structure in the revised criminal code or by current law.

1978 Senate Journal 1445.

Relying on this commentary, the state maintains that, "the clear import of Criminal Rule 35(b) is to grant jurisdiction to the superior court to correct inequities relating to prisoner classification which may have occurred since the original sentencing hearing such that the purposes of the original sentence have been subverted." We find this contention to be without merit, for its reading of the plain language of Criminal Rule 35(b) is too restrictive.

While the "thrust" of the legislature's amendment to Rule 35(b) was undoubtedly to allow for correction of inequities in the classification process, the clear and unambiguous wording of the amendment did not confine the court's authority to the narrow subject matter that was apparently the legislature's core concern. Nothing in the legislative commentary is inconsistent with an intent on the legislature's part to confer powers on the court somewhat broader than those minimally necessary to address its core concern. Absent significant ambiguity or uncertainty in the language of the rule, we see no basis for narrowing the rule by refusing to give effect to its literal terms.

■■■ The language of Criminal Rule 35(b) attaches only three prerequisites to the court's authority to modify a sentence at any time after it is originally imposed. First, some change in conditions or circumstances affecting the defendant must occur after the original sentence is imposed. For purposes of the present case, we need not decide whether the changes must be in the conditions or circumstances as they actual-

ly were at the time of sentencing or as the court and parties believed them to be. Second, the change must relate to "the purposes of the original sentence." A change relates to a purpose of the original sentence either when it significantly affects one of the fundamental sentencing goals, see State v. Chaney, 477 P.2d 441, 443–44 (Alaska 1970), and AS 12.55.005, or when it implicates some other specific objective of the original sentence that was expressly addressed in the written judgment or in the court's oral sentencing remarks. Third, the effect of the subsequent change in conditions or circumstances must be so significant as to defeat or substantially frustrate implementation of the sentencing goal or objective.[3]

In our view, a motion for modification of a sentence under Criminal Rule 35(b) will suffice to invoke the original sentencing court's jurisdiction when it alleges a change in conditions or circumstances which, if established, would meet these criteria. Should the sentencing court find that the allegations set out in a motion for modification have been established, it may, in its sound discretion, order the original sentence modified or reduced in any way that would originally have been lawful, provided that the modification or reduction does not "result in a term of imprisonment which is less than the minimum required by law." Alaska R.Crim.P. 35(b)(2).

■■■ Although we reject the narrow interpretation of Rule 35(b) proposed by the state, we conclude that Ambrose's motion for modification failed to satisfy the broader requirements of the rule as we have interpreted it. The ceremonial potlatch that Ambrose sought to attend satisfied

---

**3.** These three prerequisites render the provisions of Criminal Rule 35(b) significantly narrower than those of Criminal Rule 35(a). Under subsection (a), the sentencing court is given broad authority to reduce a sentence. No limitation or restriction of the court's authority is specified in the language of the subsection; the court is empowered to reduce a sentence for virtually any reason, subject only to the restriction that the reduction not amount to an abuse of discretion. See 3 C. Wright, *Federal Practice and Procedure* § 586 at 398–404 (1982). However, the court's authority to reduce a sentence

under subsection (a) may be exercised only within 120 days after a sentence is imposed. This time limitation acts as a necessary concomitant of the court's broad authority under subsection (a). *Id.* § 587 at 407–10. *See also* III *Standards for Criminal Justice* § 18.–7.1 and commentary at 501–02 (Approved Draft 1979). In the present case, relief would not have been available to Ambrose under subsection (a) because of the 120–day time limitation, and his motion was necessarily governed by the narrower requirements of subsection (b).

the first requirement under the rule: it qualified as a changed circumstance occurring after imposition of the original sentence. However, neither the second nor third requirements under Rule 35(b) were met.

Ambrose's motion did not allege that the potlatch directly related to any basic sentencing goal, and the court, in ordering Ambrose's release, did not purport to find any such relationship. Nor has Ambrose ever alleged that the requested modification implicated some other specific sentencing objective that was addressed in the court's original sentencing order or remarks.

Even if we posit some hypothetical relationship between Ambrose's attendance at the potlatch and his eventual rehabilitation, Ambrose did not allege, and the court did not purport to find, that the sentencing goal of rehabilitation would be defeated if Ambrose were unable to attend the potlatch. Under the requirements of Rule 35(b), the court was authorized to modify Ambrose's sentence by allowing him to attend the potlatch only if it found that his attendance at the potlatch was actually necessary to assure his rehabilitation or to prevent the frustration of some other sentencing goal.

In short, Ambrose failed to allege or establish any relationship between the relief that he sought and any particular goal of the original sentencing order, and the court found no such relationship. In the absence of either an allegation by Ambrose or an express finding by the superior court, we cannot simply assume that Ambrose's inability to attend the funeral potlatch would have defeated some basic goal of the original sentencing order.

Our conclusion is strengthened by the form of the superior court's order in this case. While the court's original sentencing order could lawfully have provided for a periodic term of imprisonment, *see* AS 12.-55.015(a)(3) and AS 12.55.125(h), and the court could have modified the original sentence by entering an amended judgment providing for periodic confinement, neither in its verbal findings nor in its written order releasing Ambrose did the court purport to impose a periodic term. In fact, nothing in the court's verbal comments or written order indicates that the court actually considered itself to be modifying the original sentence. Rather, the court simply issued an *ad hoc* order requiring the Department of Corrections to release Ambrose from confinement for a period of four days.

We recognize that the form of the court's order should not govern over its substance; however, the fact that the court ordered Ambrose released without even a pretense of actually modifying the original sentence is a telling indication that its order did not seek to correct any change in conditions or circumstances affecting a basic sentencing goal of the type contemplated by Rule 35(b).

We do not mean to imply any insensitivity to or disrespect for Ambrose's religious beliefs, and we recognize that the opportunity to attend the funeral potlatch was undoubtedly a matter of tremendous personal importance to Ambrose. Nevertheless, as the state correctly observes, the day-to-day management of prisoners is properly within the purview of the Department of Corrections, and it is generally the Department's responsibility to assure that a prisoner's needs and well-being are provided for. In this regard, the Department of Corrections has the authority to release prisoners on furloughs of short duration. *See* AS 33.30.121. The Department has adopted regulations to implement its statutory authority. *See, e.g.,* 22 Alaska Administrative Code (AAC) 05.316–.326. Ambrose has asserted no legal challenge to the adequacy of these regulations. Criminal Rule 35(b) does not authorize the sentencing court to invade the authority that is properly vested in the executive branch of government. *See LaBarbera v. State,* 598 P.2d 947, 949 (Alaska 1979); *Rust v. State,* 582 P.2d 134, 137–38 (Alaska) *modified on reh'g,* 584 P.2d 38 (Alaska 1978). This is precisely what the superior court appears to have done in the present case.

The order entered by the superior court is REVERSED.