**Charles LaBARBERA, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3445.**

Supreme Court of Alaska.

Aug. 17, 1979.

**1.** This appeal is authorized by AS 12.55.120(a) and Rule 21, Alaska R.App.P.

Mary E. Greene, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

Dean J. Guaneli, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

OPINION

BURKE, Justice.

Charles LaBarbera, nineteen years old, pled guilty to charges of manslaughter and robbery committed by the use of a firearm. On appeal he contends that his sentence to concurrent fifteen-year terms of imprisonment is excessive.[1] His second contention is that the superior court erred in refusing to modify the sentence by ordering that he be released to Family House, a therapeutic community, after serving three years of his fifteen-year sentence. Such a modification would enable appellant to complete a two-year rehabilitation program there by the time he would be eligible for parole, *i. e.,* after service of five years or one-third of his fifteen-year sentence.[2] We conclude that neither contention has merit and affirm the judgment of the superior court.[3]

**2.** AS 33.15.080 provides in part: "[N]o prisoner may be released on parole who has not served at least one-third of the period of confinement to which he has been sentenced, or in the case of a life sentence, has not served at least 15 years."

**3.** In reviewing a sentence for excessiveness,

On February 5, 1977, appellant Charles LaBarbera was indicted by a Fairbanks grand jury for the crimes of manslaughter and robbery committed by the use of a firearm. LaBarbera pled guilty to each of those charges and was sentenced to concurrent terms of fifteen years of imprisonment.[4] Thereafter, he moved to modify his sentence so that two years prior to the time he would become eligible for parole he would be released to Family House, a therapeutic community not associated with the Alaska Division of Corrections. The superior court stated that it believed it lacked the authority to order LaBarbera placed in a specific institution. It further stated, however, that it was its intention that LaBarbera be afforded whatever rehabilitation treatment was available within the system, saying: "[A]t the time that he is eligible to go into Family House, or some other suitable program . . . I would recommend that it be considered and would strongly urge that he be afforded that opportunity." The judgment was amended to reflect that recommendation. This appeal followed.

LaBarbera and a co-defendant, Randy Lee Osborne, planned for approximately one month to commit a robbery by feigning car trouble, then victimizing anyone that might stop to render them assistance. The two borrowed a friend's car and parked on a busy Fairbanks street with the emergency lights flashing. Earlier in the day Osborne had obtained a .38 caliber revolver from another friend, Richard Castillo, advising LaBarbera at that time that he planned to shoot their intended victim. Osborne had previously threatened to cut the throat of anyone picking them up. Apparently noticing their "difficulty," John Ieppert stopped and offered to take LaBarbera and Osborne to a gas station when they informed him that their vehicle was out of gas. LaBarbera got into the front seat of Ieppert's car while Osborne sat in the back. After they had travelled a short distance, Osborne drew his revolver and instructed Ieppert to change places with LaBarbera. Osborne then shot Ieppert in the back twice, killing him. The robbers immediately divided approximately three hundred dollars in cash which they found in Ieppert's wallet. Then, after parking Ieppert's car and throwing away the keys, they returned to their borrowed car.

The following day, LaBarbera and Osborne returned to Ieppert's car to look for additional items of value. At that time they removed a watch from the victim's body and took a piece of radio equipment which they found in the back seat of the car.

After the robbery and killing Osborne returned the revolver to its owner, Richard Castillo. Castillo later traded the weapon to one Harvey Pannick for a rifle. When Castillo learned of the robbery and homicide, he attempted to get the revolver back from Pannick, so that it could be disposed of. Pannick, however, refused to call off the trade so LaBarbera and Castillo beat him up, and he told them where the gun was hidden. After paying Castillo twenty dollars for the weapon, LaBarbera threw it into a river.

When questioned some two weeks after the incident, LaBarbera initially denied any knowledge of the killing but later confessed. After giving a complete statement, he

---

our established standard of review is whether the trial court was clearly mistaken in imposing the sanction that it did. *McClain v. State,* 519 P.2d 811 (Alaska 1974). We are under no such restraint in reviewing the trial court's interpretation of the law governing its authority to modify the sentence. *See, e. g., Rust v. State,* 582 P.2d 134, *modified on reh'g,* 584 P.2d 38 (Alaska 1978).

4. AS 11.15.040 provides in part: "[A] person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years."

AS 11.15.240 provides: "A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year."

AS 11.15.295 provides in part: "A person who uses or carries a firearm during the commission of a robbery . . . is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years."

cooperated fully with the police and the district attorney's office in the prosecution of his cohort Osborne.

In *Rust v. State,* 582 P.2d 134, *modified on reh'g,* 584 P.2d 38 (Alaska 1978), we held:

> [T]he sentencing court does not have the authority to designate a particular prison facility in which a prisoner is to be confined. Although the sentencing court can recommend that the defendant be incarcerated in a particular facility under Alaska's statutes, the ultimate responsibility for the classification and thus placement of prisoners in its charge has been vested in the Division of Corrections.

582 P.2d at 138 (footnote omitted).[5] In *Rust* we recognized a prisoner's right to necessary medical services, including psychological and psychiatric treatment, and the authority of the judiciary to enforce that right upon a proper showing in an independent civil action. 584 P.2d at 39. Subsequently, in *Abraham v. State,* 585 P.2d 526 (Alaska 1978), *Rust* was extended to encompass a prisoner's right to a rehabilitation program under article I, section 12, of the Alaska Constitution and AS 33.30.-020. However, our recognition of the right to rehabilitation does not imply that a court at the time sentence is pronounced has the authority to designate a particular facility for incarceration of the defendant or a particular program for his rehabilitation. It is only after a demonstrated failure to provide an appropriate rehabilitation program that judicial intervention is proper. Thus the superior court in this case correctly concluded that it could not grant the relief requested in LaBarbera's motion for modification of sentence.[6]

Given the brutal nature of the offense, we further conclude that LaBarbera's fifteen-year sentence was not excessive.[7] The minimum sentence for a robbery committed by means of a firearm is ten years.[8] Manslaughter is punishable by imprisonment for a term of not more than twenty years.[9] It is clear that LaBarbera was a willing participant in the robbery, having planned the crime with Osborne over a period of approximately one month prior to its commission. Moreover, appellant was aware that Osborne was carrying a weapon at the time of the robbery and that Osborne had stated that he intended to kill the victim.[10]

AFFIRMED.

---

**5.** Our decision in *Rust* was originally announced on July 21, 1978, after LaBarbera filed his opening brief on appeal. He does, however, discuss the case in his reply brief.

**6.** LaBarbera tries to distinguish *Rust,* arguing that the defendant in that case sought placement in a particular facility within the Division of Corrections, while he seeks temporary removal from the Division's physical custody in order to gain the rehabilitative treatment guaranteed him by article I, section 12, of the Constitution of Alaska. This argument is not persuasive.

**7.** While a juvenile, LaBarbera participated in another armed robbery. In that incident LaBarbera and three other juveniles broke into a home and held the occupants at gunpoint.

**8.** *See* note 4 *supra.*

**9.** *See* note 4 *supra.*

**10.** Although he did not personally fire the fatal shots, under Alaska law LaBarbera was a principal and subject to being punished as such. AS 12.15.010.