Major TOWNSEL, III, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1850.

Court of Appeals of Alaska.

Nov. 4, 1988.

1354

Michael Dieni, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Major Townsel was convicted, following a jury trial, of four counts of robbery in the first degree, AS 11.41.500(a)(1), and one count of misconduct involving weapons in the first degree, AS 11.61.200(a)(3). Judge Rene Gonzalez sentenced Townsel to the presumptive seven-year term for each count of robbery. He imposed three of the robbery sentences concurrently but imposed the fourth sentence consecutively. Judge Gonzalez sentenced Townsel to a five-year concurrent term for misconduct involving weapons. Thus, Townsel's composite sentence is fourteen years. Townsel appeals his conviction and sentence.

Townsel first argues that Judge Gonzalez erred in failing to grant his suppression motion. He argues that the evidence against him was obtained as the result of a traffic stop which was used as a pretext for a search. In deciding this issue, Judge Gonzalez issued a written decision which set out the facts of the case as he found them.

Judge Gonzalez found as follows:

On January 5, 1986 at approximately 11:58 p.m. an individual robbed the Oaken Keg at 900 East Dimond Boulevard in Anchorage. Anchorage Police Officer Mizelle responded at approximately 11:59 p.m. and made contact with the alleged victim Glenda Morrison. Ms. Morrison informed the officer that a juvenile black male between the ages of 16–20, approximately 5′6″–5′–7″ and 130–140 pounds with black hair and brown eyes had just robbed the Oaken Keg. The individual was described as wearing a brown and white bandanna and a floppy or ski type hat. The individual had left on foot travelling east bound from the Oaken Keg and Carrs complex.

After the robbery Ms. Morrison had contacted her supervisor by intercom. The supervisor apparently contacted Ms. Morrison in person and notified the police. A police dispatcher relayed the information obtained from the Oaken Keg personnel over the radio to on duty officers.

At approximately 11:58 p.m. Officer David Rochford was on duty at the intersection of 36th and "A" when he was advised by dispatch that an armed robbery had taken place at the Oaken Keg at Old Seward and Dimond. Dispatch indicated that the suspect was a juvenile black male, armed with a rifle, and had fled on foot.

Officer Rochford proceeded to the intersection of New Seward and 36th Avenue and arrived at said intersection approximately two minutes later. Upon his arrival he observed a vehicle traveling north bound at the speed limit. The following vehicle infractions were observed by Officer Rochford: vehicle had its left headlight out, the driver's window was obstructed by clouded visqueen, a taillight lens was broken allowing white light to shine through, and the license plate was obscured.

Rochford let the vehicle travel out of view. He used his emergency lights to cross the intersection and turn onto the New Seward.

When Officer Rochford was behind subject vehicle, he determined that the vehicle was exceeding the speed limit by ten miles per hour—by travelling at approximately 55 miles per hour in a 45 mile per hour zone.

Officer Rochford testified that he would have stopped the vehicle for the traffic and vehicular infractions in the normal course of his duties. Consequently the officer stopped the vehicle. At the driver's window, the officer asked the driver to exit the vehicle. The driver explained that because the driver's door did not open, he had to exit from the passenger side. As the driver slid across the seat and exited from the car, the officer asked him for his driver's license. As the driver spoke the officer saw the muzzle of a rifle in the back seat of the car. When the officer told the driver not to touch the rifle the defendant reached for the gun. The officer drew his weapon and the defendant threw the rifle to the ground and fled on foot. The officer was unable to catch the defendant. Another officer arrived on the scene and seized a license, a wallet, a bag and a rifle from the vehicle. A search warrant was issued to search defendant's residence and to further search the vehicle based upon the evidence seized. Relying upon the evidence found in the vehicle and at the defendant's residence, the defendant was charged in the indictment with four courts of robbery in the first degree, one count of burglary in the second degree, and one count of misconduct involving weapons in the first degree.

These facts, as found by Judge Gonzalez, are supported by the record. Judge Gonzalez then concluded as follows:

Officer Rochford had substantial evidence to stop defendant's vehicle for violations of traffic regulations and the evidence presented does not support the assertion that this was merely a pretext stop.

■ Townsel cites *Brown v. State*, 580 P.2d 1174 (Alaska 1978) as the leading Alaska case in support of his position. *Brown* does establish that "an arrest (or a traffic stop) should not be used as a pretext for a search." *Id.* at 1176 (footnote omitted). However, the case also establishes that where "there is substantial evidence to support the trial court's determination that [the defendant's] vehicle was

stopped for a violation of traffic regulations and that [the stop] was not a pretext stop," then the stop was not illegal. *Id.* at 1176 (footnote omitted). Officer Rochford testified that he stopped the vehicle for the traffic and vehicular infractions, not on a pretext to enable him to investigate the robbery. He testified that he would have made this stop under normal conditions if he was not investigating the robbery. Judge Gonzalez found the officer's testimony to be credible and this conclusion is not clearly erroneous. We conclude that *Brown* is controlling, and we affirm the trial court's decision.

Townsel next argues that his sentence was excessive. Townsel was thirty-five at the time of these offenses and had no prior felony convictions. In 1981, he served seventeen days in jail for misconduct involving weapons; in the presentence report Townsel indicated he had discharged a firearm in the city limits. In 1976, he was fined $500 dollars for possession of marijuana. He has had several non-serious traffic violations. Townsel served two years in the military and received an honorable discharge.

In sentencing Townsel, Judge Gonzalez found that the four armed robberies were planned. He noted that all of the robberies involved robbing businesses at a time when older women were alone in the establishment. He noted that the robberies were all done with a weapon which had been specially modified so that it could be easily concealed. Judge Gonzalez also considered the fact that Townsel had lunged for the weapon when confronted by the officer during the stop. He found Townsel's pattern of conduct to be particularly serious.

Robbery in the first degree is a class A felony. The maximum sentence is twenty years. The presumptive sentence for a first felony offender who possesses a firearm during the offense is seven years. A second felony offender faces a ten-year presumptive term, a third felony offender fifteen years. In *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), we stated the general rule that "[n]ormally a first offender should receive a more favorable

sentence than the presumptive sentence for a second offender. It is clear this rule should be violated only in an exceptional case." Thus, Judge Gonzalez could sentence Townsel to a sentence of ten years or greater only if he found the case to be exceptional.

 Furthermore, the A.B.A. Standards governing sentencing alternatives and procedures provide that "[f]or most offenses, the maximum prison term authorized ought not to exceed ten years and normally should not exceed five years. Longer sentences should be reserved for particularly serious offenses committed by particularly dangerous offenders." III *Standards for Criminal Justice*, § 18–2.1 (2nd ed. Supp.1982). We have defined who is a particularly dangerous offender by referring to the A.B.A. Standard governing habitual offenders. *Id.* at § 18–4.4. That standard defines an habitual offender as one who has been convicted of at least two prior felonies, which were committed on two different occasions, within five years of the present offense. Under the standards, the habitual offender must have previously served a sentence in excess of one year. Under the A.B.A. Standards, therefore, Townsel does not qualify as either a habitual offender or a particularly dangerous offender. Because Townsel has never been previously convicted of a felony nor served an extensive period of confinement, we do not believe that there is a reliable basis for concluding that he is incapable of rehabilitation or that his isolation from society for a period in excess of ten years is necessary.

Except in cases where the defendant has committed an unclassified felony, this court and the Alaska Supreme Court have followed the A.B.A. Standard ten-year benchmark. *See Pruett v. State*, 742 P.2d 257 (Alaska App.1987); *Skrepich v. State*, 740 P.2d 950 (Alaska App.1987). Recently, in *Williams v. State*, 759 P.2d 575 (Alaska App.1988), this court followed the A.B.A. Standards in a case similar to Townsel's. Williams was sentenced to ten years' imprisonment in federal court for armed bank robbery and for using a deadly weapon during a crime of violence. Williams was also convicted of three second-degree robberies in state court. In state court, the sentencing judge sentenced Williams to eight years with five years suspended, but imposed that sentence consecutively to the earlier ten-year federal sentence. We found that the sentencing judge was clearly mistaken in imposing Williams' three-year unsuspended terms consecutively to his ten-year federal prison term. We thus ordered Williams' sentence reduced to a composite sentence of fifteen years with five years suspended on both his state and his federal charges. Thus, Williams' term of actual imprisonment was ten years.

It appears to us that Townsel's case is very similar to *Williams*. Townsel was thirty-five years old at the time of his offense. Williams was a significantly younger offender at eighteen years of age. However, Williams had an extensive history of minor property and weapon offenses as a juvenile. Furthermore, Williams had been arrested soon after committing the sixth in a series of strong-armed robberies. While he was released on bail, Williams committed the armed robbery of a federal credit union. Townsel's case is aggravated by his consistent use of an illegal weapon and his dangerous confrontation with the police officer when he was stopped. On balance, we conclude that Williams and Townsel are similar offenders who deserve similar sentences. Although both offenders qualify for severe sentences, we do not believe that they qualify for sentences in excess of the ten-year A.B.A. Standard benchmark. We accordingly find Townsel's sentence to be clearly mistaken.

We AFFIRM Townsel's conviction. We VACATE Townsel's sentence, and we REMAND to the trial court with directions to impose a sentence of fourteen years with four years suspended.