Sidney M. DeGROSS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1931.

Court of Appeals of Alaska.

Jan. 20, 1989.

chorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and HUNT, Superior Court Judge.[*]

## OPINION

BRYNER, Chief Judge.

Sidney M. DeGross was charged with three counts of robbery in the first degree, one count of assault in the second degree, and two counts of attempted murder. The robbery charges stemmed from three separate armed robberies. The second-degree assault charge related to the second of the three robberies; the two attempted murder charges related to the third.

DeGross entered a plea of no contest to the third robbery and was tried by a jury on the remaining charges. The jury convicted DeGross of the second robbery but acquitted him of the first. The jury also acquitted DeGross of the second-degree assault charge. On the attempted murder charges, the jury found DeGross guilty of the lesser-included offense of assault in the third degree. Superior Court Judge Victor D. Carlson sentenced DeGross to maximum consecutive terms totalling fifty years' imprisonment.

On appeal, DeGross challenges his conviction, alleging that the trial court erred in responding to an *ex parte* jury communication without first affording the defense an opportunity to comment on or object to the court's response. DeGross also challenges his sentence as excessive. We affirm DeGross' conviction but vacate his sentence and remand for resentencing.

We turn first to DeGross' merit issue. During a recess that occurred toward the end of DeGross' trial, two jurors informed the court clerk that the state's chief investigating officer, Sergeant Bailey, appeared to have been signalling to one of the state's witnesses while the witness testified. The jurors complained that Bailey's conduct was distracting. The clerk relayed this complaint to the trial court. The complaint

Brant McGee, Public Advocate, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

was not immediately disclosed to the parties.

When proceedings resumed, the trial judge asked Bailey, in the presence of the jury and the parties, whether she had been signalling to the witness. Bailey replied, "No, sir," and the matter was dropped. After explaining to the jury the procedures that would be followed when deliberations began the next day, the court excused the jury for the night.

After the jury left the courtroom, the parties were informed of the jurors' complaint. DeGross moved for a mistrial. He alleged that Bailey had in fact been signalling to the state's witness. DeGross offered to call two witnesses to testify that they had observed the signalling. The trial court denied DeGross' motion for a mistrial but offered to give a jury instruction on the matter. DeGross declined this offer.

On appeal, DeGross argues that the court erred in failing to disclose the jury's communication immediately and in failing to allow DeGross an opportunity to be heard on the matter prior to deciding upon an appropriate response. To support this argument, DeGross cites *Wamser v. State*, 652 P.2d 98, 101–02 (Alaska 1982), *Dixon v. State*, 605 P.2d 882, 884 (Alaska 1980), and *Jones v. State*, 719 P.2d 265, 267 (Alaska App.1986).

■ The state responds that these cases are distinguishable because they involve situations in which the trial court conducted proceedings outside the defendant's presence. The state correctly points out that, in the present case, DeGross was not absent from any proceedings. We nevertheless believe that the cases relied on by DeGross are highly relevant, for they firmly establish that the accused is entitled to be informed of jury communications and to be consulted as to an appropriate response. Although the ultimate choice of a response must be left to the discretion of the trial court, procedural fairness requires that the accused be included in the decisional process.

■ Here, we conclude that the trial court erred in failing to inform the parties of the jury's complaint and in failing to solicit their suggestions prior to deciding upon an appropriate response. We are convinced, however, that the error was harmless beyond a reasonable doubt.

As we have already noted, no proceedings were conducted outside DeGross' presence. DeGross was apprised of the jurors' communication soon after it occurred, and immediately after the court responded to the communication by questioning Sergeant Bailey. The information was disclosed well before the conclusion of the case, and prior to the discharge of the jury. When DeGross learned of the communication, the only action that had been taken by the trial court was to question Sergeant Bailey. Bailey's only statement had been a two-word denial.

Under these circumstances, it seems apparent that DeGross learned of the jury communication in time to enable him to request further inquiry or additional corrective measures. Nothing that the court had done prior to informing DeGross was inherently prejudicial. DeGross has failed to suggest any way in which the court's handling of the matter prior to its disclosure to the parties could have worked any prejudice that was not capable of being remedied once the information was disclosed. Upon learning of the jurors' communication, DeGross was in effectively the same position as he would have been in had the court given him timely notice of the communication. DeGross requested no additional corrective measures and declined the trial court's offer of a curative instruction. The only request made by DeGross was his motion for a mistrial. On appeal, DeGross does not contend that the court's denial of a mistrial in itself amounted to an abuse of discretion.

On this record, we are unable to find any reasonable possibility of prejudice. The error was therefore harmless.

■ We next consider DeGross' sentence appeal. DeGross' two first-degree robbery convictions were class A felonies, punishable by a maximum term of twenty years for each count. Because DeGross used a firearm in the commission of the two rob-

beries, he was subject, as a first felony offender, to a presumptive term of seven years on each robbery count. DeGross' two third-degree assault convictions were class C felonies. The maximum sentence for each count was five years. Because the assaults were committed against police officers, each offense carried a presumptive term of one year. AS 12.55.125(e)(3).

Prior to sentencing, the state submitted notice of eight proposed aggravating factors. The notice alleged that the aggravating factors applied to DeGross' "conviction for robbery in the first degree," but did not specify which of the two robbery convictions it referred to.

At the sentencing hearing, the prosecution indicated that it believed all of the alleged factors applied to both robberies. The prosecution also indicated that it believed some of the factors also applied to the assault convictions. The prosecution promised the court that, in its argument on the alleged aggravating factors, it would specify which of the factors it believed to be applicable to the assault charges. Despite this promise, the prosecution's argument on the aggravating factors made only passing reference to the assaults, leaving considerable room for uncertainty as to the state's position.

After hearing the defense's response to the state's proposed aggravating factors, the sentencing court peremptorily accepted all of the factors. The court's findings, in their entirety, were as follows:

> I find that there's proof by clear and convincing evidence that each of the aggravators that have been submitted to the court have been proved as to the crimes to which they were tied by the prosecuting attorney.

The court then heard the parties' sentencing arguments and proceeded to impose sentence. The court sentenced DeGross to maximum terms of twenty years for each robbery count and to maximum terms of five years for each count of assault. All of the terms were imposed consecutively, for a total of fifty years' imprisonment.

On appeal, DeGross challenges the applicability of several of the aggravating factors that were found by the sentencing court, and he alleges that the total term imposed below is excessive. We conclude, however, that the superior court's sentencing findings are insufficient to allow meaningful appellate review of DeGross' sentence.

At sentencing, the prosecution advanced numerous aggravating factors without making it clear precisely which factors were alleged to apply to DeGross' assault charges and which were not. The superior court did not resolve the apparent confusion, finding only that all of the aggravating factors were established "as to the crimes to which they were tied...."

Although the prosecution advanced alternative factual and legal theories in support of many of the alleged aggravating factors, the sentencing court did not specify its factual or legal basis for finding that the alleged factors had been established. Instead, it made only a conclusory determination that all of the factors had been proven by clear and convincing evidence.

In imposing the maximum consecutive sentences, the court made reference to the *Chaney* sentencing criteria and made clear its view that DeGross was a worst offender and that his conduct was among the most serious in its class. However, the court failed to expressly refer to any of the statutory aggravating factors or even mention the applicable presumptive terms.

When aggravating or mitigating factors are alleged in the context of a presumptive sentencing proceeding, AS 12.55.155(f) expressly requires that "[a]ll findings must be set forth with specificity." We have previously pointed out that compliance with this statutory directive requires more than a conclusory finding that aggravating or mitigating factors have been established by the requisite standard of proof:

> AS 12.55.155(f) expressly addresses the need for factual findings with respect to aggravating and mitigating factors, stating, in pertinent part: "All findings [relating to factors in aggravation and factors in mitigation] must be set out

with specificity." The rationale for the requirement of specific findings by the sentencing court is explained in the commentary to subsection (f):

> To preserve the rights of both parties on appeal, the subsection requires that the judge specifically set forth decisions with respect to aggravating or mitigating factors on the record.

We believe that the provisions of subsection (f) must be read to require more than a *pro forma,* conclusory statement that an aggravating or mitigating factor has or has not been shown by clear and convincing evidence. Such a finding is of little utility in preserving the rights of the parties in a sentence appeal. We conclude that subsection (f)'s requirement that findings "be set out with specificity" calls for sentencing judges to include, in their remarks on the record, the following specific information: (1) the specific factors in aggravation and mitigation found to have been established by clear and convincing evidence; (2) the evidence upon which the court has relied in finding the existence of aggravating or mitigating factors; (3) an explanation of the weight given by the court to each aggravating or mitigating factor, and the relative importance of each factor in comparison with other aggravating or mitigating factors established; and (4) an evaluation of the totality of the aggravating and mitigating factors in light of the *Chaney* criteria, as expressed in AS 12.55.005, in order to determine the amount by which the presumptive sentence for the particular offense should be adjusted.

*Juneby v. State,* 641 P.2d 823, 845–46 (Alaska App.1982) (footnotes omitted), *modified on other grounds,* 665 P.2d 30 (Alaska App.1983).

We further emphasized in *Juneby* that the requirement of specific findings is critical not only because it assures an adequate record for meaningful appellate review, but also because it encourages a reasoned and dispassionate sentencing decision by the trial court:

> We believe that [specific findings] are necessary to fulfill the legislature's goal of assuring the parties of a record that is sufficient to preserve their right to an appeal. Moreover, because any adjustment of a presumptive sentence in light of aggravating or mitigating factors will call for an application of the *Chaney* criteria and will ultimately be subject to review under the familiar "clearly mistaken" standard, the findings that we have required are fully in keeping with the traditional requirement that sentencing decisions be carefully formulated and thoroughly explained.

*Id.* at 846 n. 39.

The findings in the present case do not comport with the requirement of AS 12.55.-155(f) or with the requirements of our decision in *Juneby.* Because the requirement of specific findings relates not only to the adequacy of the appellate record, but also to the appropriateness of the trial court's sentencing decision, we conclude that the lack of adequate findings in the present case requires a remand for resentencing, rather than merely a remand for additional findings.

Given the lack of adequate findings, it would be premature for us to determine, at this juncture, whether DeGross' fifty-year term is excessive. In order to provide guidance to the sentencing court on remand, however, we believe it appropriate to direct the court's attention to several additional concerns.

■ Initially, we must underscore the need for adherence to the presumptive sentencing structure on remand. In *Juneby,* we pointed out that our presumptive sentencing system was designed to promote uniformity in sentencing and to eliminate irrational disparity. We cautioned that:

> Unless the provisions of [the presumptive sentencing statute] are adhered to strictly, and unless a measured and restrained approach is taken in the adjustment of presumptive sentences for both aggravating and mitigating factors, then the prospect of attaining the statutory goal of uniform treatment for similarly situated offenders would quickly be eroded, the potential for irrational disparity

in sentencing would threaten to become reality, and the revised code's carefully fashioned system of escalating penalties for repeat offenders would be rendered utterly ineffective.

*Juneby,* 641 P.2d at 833.

We went on in *Juneby* to acknowledge the importance of the *Chaney* sentencing criteria in determining the extent to which a presumptive term should be adjusted. We emphasized, however, that the focus of the sentencing court's attention must remain on the statutorily specified presumptive term:

> Proof of an aggravating or mitigating factor does not, however, warrant wholesale abandonment of the presumptive sentencing structure and application of the *Chaney* criteria to the totality of the circumstances of the case as if a presumptive sentence had never applied. As we said in the original *Juneby* opinion:
>
>> When applied to the adjustment of a presumptive sentence, ... the *Chaney* analysis should not be broadened into a consideration of all circumstances of the offense, as if the sentence were being imposed anew, without regard for the presumptive term. Instead, consideration of the *Chaney* criteria should focus specifically on the aggravating and mitigating conduct in the particular case. The presumptive term should remain as the starting point of the analysis, and the *Chaney* criteria should be employed for the limited purpose of determining the extent to which the totality of the aggravating and mitigating factors will justify deviation from the presumptive term.

*Juneby v. State,* 665 P.2d 30, 37 (Alaska App.1983) (quoting *Juneby v. State,* 641 P.2d at 835 n. 21).

■ As we have previously indicated, the sentencing court, in imposing DeGross' sentence, did not specifically discuss any aggravating factors or even mention the applicable presumptive terms for DeGross' offenses. In resentencing DeGross on remand, the superior court should bear in mind the need to focus its sentencing analysis on the applicable presumptive terms and on the extent to which the specific aggravating factors established by the evidence warrant adjustment to those terms.

A closely related concern derives from the presumptive sentencing system's underlying goals of uniformity and elimination of disparity. These goals place a premium on consideration of sentences received by similarly situated offenders who have been convicted of similar offenses. The need for comparison is particularly great in offenses involving first felony offenders who are convicted of multiple class A or unclassified felonies, since the potential for disparity is at its greatest in such cases. As we said in *Hancock v. State,* 741 P.2d 1210, 1214 (Alaska App.1987):

> In order to make the determination that a defendant requires a period in excess of fifteen years for deterrence and rehabilitation, it is imperative that the trial court compare his background, experience and offenses with those of others sentenced to extended terms.

In aggravated cases involving first felony offenders who are convicted of multiple sexual assault or sexual abuse offenses (crimes that are unclassified felonies carrying a maximum term of thirty years' imprisonment), we have consistently applied a benchmark sentencing range of ten to fifteen years' imprisonment. *Hancock v. State,* 706 P.2d 1164, 1172 (Alaska App. 1985). We have indicated that sentences in excess of this benchmark can be justified only by an express finding that the accused cannot be rehabilitated or deterred within a lesser period of time. *Hancock,* 741 P.2d at 1213–14. For aggravated cases of assault in the first degree, a class A felony, we have indicated that first offense sentences exceeding ten years will rarely be appropriate. *See Pruett v. State,* 742 P.2d 257, 265–66 & n. 10 (Alaska App.1987).

With reference to cases involving multiple convictions for class A felonies or their equivalent, we have noted:

> [W]e have only approved total sentences of forty years or more for persons convicted of multiple crimes warranting con-

secutive sentences who also have a felony record for crimes of violence.

*Hancock v. State,* 706 P.2d at 1173.

These benchmarks were not adopted arbitrarily. Rather, we arrived at them after studying sentences actually imposed for comparable conduct by trial judges throughout the state. Moreover, it seems likely that the benchmarks may overstate actual historical sentencing practices. The benchmarks are based solely on a review of published opinions in sentence appeals. Defendants receiving substantially more lenient sentences would seemingly have little reason to appeal their sentences. Consequently, cases involving more lenient sentences may be significantly underrepresented in published sentence appeal decisions.

■ We have also emphasized that a "worst offender" finding will not in itself justify the imposition of lengthy consecutive sentences:

A "worst offender" designation, standing alone, permits imposition of the maximum term for the single most serious offense.... The designation does not, however, automatically permit consecutive sentences exceeding the maximum for the single most serious crime. In order to impose such a sentence, the court must actually find, as a matter of fact, that the defendant will continue to pose a danger to the community during the extended term and that his continued isolation is actually necessary. *See Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977); *Cleary v. State,* 548 P.2d 952, 956 (Alaska 1976); *Lacquement v. State,* 644 P.2d 856 (Alaska App.1982).

*Hancock,* 741 P.2d at 1214 n. 2. *See also Sweetin v. State,* 744 P.2d 424, 426 (Alaska App.1987).

Recently, this court has decided several cases involving first felony offenders convicted of multiple counts of robbery. In these cases, we have expressed reluctance to approve any sentence involving a total of more than ten years of unsuspended incarceration. *See Hale v. State,* 764 P.2d 313 (Alaska App.1988); *Townsel v. State,* 763 P.2d 1353 (Alaska App.1988); *Williams v. State,* 759 P.2d 575 (Alaska App.1988). We have expressed similar views in cases involving first felony offenders convicted of other types of class A and class B felonies. *See, e.g., Pruett v. State,* 742 P.2d at 265–66; *Skrepich v. State,* 740 P.2d 950, 954 (Alaska App.1987). Only in the most unusual and egregious cases have we approved sentences exceeding this ten-year benchmark. *See Sweetin v. State,* 744 P.2d at 426 (approving sentences totalling thirty-one years with five years suspended for a first offender convicted of two counts of assault in the first degree, one count of assault in the second degree, and one count of criminal nonsupport, where convictions were based on a series of incidents involving deliberate abuse of a young child that resulted in serious and irreversible brain damage).

In *Pears v. State,* 698 P.2d 1198, 1204–05 & n. 15 (Alaska 1985), the Alaska Supreme Court emphasized the need to restrict sentences of imprisonment to the minimum period necessary to effectuate the goals of sentencing. The court pointed out that lengthy terms of imprisonment cannot properly be imposed for purposes of rehabilitating an offender. The court also made it clear that extremely long prison terms will seldom be necessary for purposes of deterrence or community condemnation. *Pears* strongly supports the conclusion that, before imposing a term of more than ten years of unsuspended incarceration on an offender who has been convicted of multiple class A felonies, the sentencing court must make an express finding that the offender cannot be deterred or rehabilitated by a lesser term.[1] *See Castle*

---

**1.** Our decisions in *Farmer v. State,* 746 P.2d 1300 (Alaska App.1987), and *Jones v. State,* 744 P.2d 410 (Alaska App.1987), are not to the contrary. In those cases, we considered our earlier holding in *Lacquement v. State,* 644 P.2d 856 (Alaska App.1982). *Lacquement* suggested that, in all cases involving multiple offenses, the sentencing court was required to find that isolation of the defendant was actually necessary before it could impose consecutive sentences exceeding the presumptive term for the defendant's most serious offense. We declined to read *Lacquement* inflexibly in *Farmer* and *Jones,* holding that consecutive terms in excess of the single

*v. State,* 767 P.2d 219, 221 & n. 2 (Alaska App.1989).

In the present case, the record is devoid of any indication that the sentencing court considered the sentencing benchmarks that we have previously established or sentences previously approved in cases involving similarly situated offenders. Although the court found DeGross to be a worst offender, it did not conclude that his continued isolation for the full fifty-year term was actually necessary for the protection of the community.

We recognize that DeGross' offenses are exceedingly serious within their class. Nevertheless, DeGross was only twenty-one years of age when he committed these offenses. He had been convicted of only two misdemeanors as an adult, both resulting from a single incident. For these offenses, DeGross apparently served ten days in jail.

Although DeGross was adjudicated a delinquent as a child for committing a burglary, he was not institutionalized for the offense; rather, he was placed on probation. It appears from the presentence report that he performed satisfactorily while under probationary supervision.

DeGross appears to suffer from a serious problem with alcohol and drug abuse. There is no indication in the record that he has ever been afforded an opportunity to address this problem through intensive treatment, and he has no history of failure in past rehabilitative or therapeutic settings.

In concluding that DeGross' prospects for rehabilitation were slight, the sentencing court appears to have relied heavily on inferences concerning DeGross' psychological makeup that the court drew from the conduct involved in the current offenses. Yet no psychological or psychiatric evaluation was prepared for sentencing purposes.

The only psychological evidence in the record was submitted by DeGross' father, a psychologist. His testimony tended to indicate that DeGross' participation in the crimes may have stemmed as much from situational difficulties connected to recent family troubles as from more basic character flaws.

In similar cases, both this court and the Alaska Supreme Court have expressed the view that an unusually lengthy term of confinement should not be imposed—particularly in the case of a youthful first offender—without the benefit of a psychological evaluation. *See, e.g., Andrews v. State,* 552 P.2d 150, 154 (Alaska 1976); *Tommy v. State,* 551 P.2d 179, 180–8.1 (Alaska 1976); *Davenport v. State,* 543 P.2d 1204, 1211 (Alaska 1975); *Salud v. State,* 630 P.2d 1008, 1013–14 (Alaska App.1981). *See also Hancock v. State,* 706 P.2d 1164, 1173 (Alaska App.1985). *But see Good v. State,* 590 P.2d 420, 422 (Alaska 1979); *Brown v. State,* 578 P.2d 982, 983–84 (Alaska 1978); *Adams v. State,* 521 P.2d 516, 518–19 (Alaska 1974); *Newsom v. State,* 512 P.2d 557, 562–63 (Alaska 1973).

In the present case, we believe that the superior court's sentencing decision on remand should be made only after appropriate consideration of cases involving other offenders convicted of like crimes. In the event the sentencing court concludes that DeGross' total sentence should substantially exceed the benchmark sentences established by this court for similarly situated offenders, it should make express findings distinguishing this case. The court should not impose sentences exceeding the twenty-year maximum for a class A felony unless it first determines, and expressly states on the record, that such a term is actually necessary for the protection of the community and that DeGross can neither be rehabilitated nor deterred by the imposition of a

most serious presumptive term could be based on sentencing goals other than isolation. Neither *Farmer* nor *Jones,* however, involved consecutive terms totalling more than ten years. While *Farmer* and *Jones* permit consecutive terms to be imposed for reasons other than

isolation when the composite sentence does not exceed ten years, neither case is inconsistent with a requirement that composite sentences exceeding ten years for first offense class A felony offenders be based on the need for isolation.

shorter sentence. In any event, the sentencing court should not impose a sentence in excess of ten years' imprisonment without first ordering the preparation of a full psychological evaluation for DeGross.[2]

The conviction is AFFIRMED. The sentence is VACATED, and this case is RE-MANDED for resentencing in conformity with the views expressed herein.

COATS, J., not participating.

---

2. Apparently no psychological evaluation was requested in advance of the original sentencing hearing. It is certainly possible that DeGross' counsel elected to forego an evaluation as a matter of strategy. On remand, DeGross will, of course, have the ability to expressly decline a psychological evaluation. In that event, the sentencing court may proceed to draw inferences concerning his psychological makeup that are supported by the record. *See Hale v. State,* 764 P.2d 313, 316 n. 2 (Alaska App.1988).