**Sidney M. DeGROSS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3438.**

Court of Appeals of Alaska.

Aug. 9, 1991.

---

Larry Cohn, Anchorage, for appellant.

Stephanie Rhoades, Asst. Dist. Atty., Mary Anne Henry, Acting Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and ANDREWS and HUNT, Superior Court Judges.[*]

## OPINION

BRYNER, Chief Judge.

Sidney M. DeGross was convicted of two counts of first-degree robbery and two counts of third-degree assault. Superior Court Judge Victor D. Carlson sentenced DeGross to maximum terms on all counts: twenty years for each robbery and five years for each assault. Judge Carlson ordered the sentences to run consecutively, for a total term of fifty years' imprisonment. DeGross appealed his convictions and sentence. This court affirmed the convictions but remanded for further sentencing proceedings, concluding that the original sentencing findings were inadequate. *DeGross v. State*, 768 P.2d 134 (Alaska App.1989). On remand, Judge Carlson reimposed maximum consecutive sentences. DeGross renews his appeal, challenging his sentence as excessive. We reverse.

## THE OFFENSES

DeGross' convictions resulted from his participation in two separate armed robberies. On the night of October 23, 1985,

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

DeGross and a companion, Roger Thiel, entered a McDonalds restaurant in Anchorage while a third companion waited for them outside. DeGross carried a pistol, and Thiel a rifle. DeGross fired a warning shot and ordered everybody to the floor. He held his pistol to the manager's head and threatened to kill her if she did not open the safe within twenty seconds. When the manager failed in her first attempt, DeGross pressed the gun closer and repeated his death threat. After securing the contents of the safe, DeGross ordered the manager to empty the restaurant's cash drawers.

As DeGross and Thiel prepared to leave, they noticed David Odum, a McDonalds' employee they had previously been acquainted with in school. Apparently concerned that Odum might recognize and report them, they struck him with their guns and threatened to kill him. As the men left McDonalds, DeGross grabbed the manager by the hair and told her he would return to kill her if she reported the robbery. DeGross and Thiel then fled with approximately $4,000 in cash.

A week later, on Halloween night, 1985, DeGross and several companions robbed a Carrs supermarket in Anchorage. This time, Thiel stood watch outside as John Hennessey and DeGross entered the store, both carrying handguns. The men fired a warning shot. DeGross entered the manager's booth, threw the manager to the floor, and ordered her to open the safe. He fired another shot for emphasis. After emptying the safe and one of the store's cash registers, DeGross pointed his gun at the manager's head and threatened to come back and kill her if anything went wrong. DeGross and Hennessey then fled.

Upon emerging from the front doors of the store, DeGross and Hennessey encountered police officers, who were responding to a silent alarm. The two men immediately reentered the store and ran toward the back doors.

Meanwhile, two other officers, Laren Zager and William Webster, pulled into the area behind the supermarket. Thiel opened fire on them. When DeGross and Hennessey ran out the back of the store, Zager and Webster were occupied with Thiel. DeGross and Hennessey began firing at the officers. Hennessey ran toward Zager, firing. Zager returned fire and fatally wounded Hennessey. As Zager attempted to tend to the wounded Hennessey, DeGross fired two shots at the officer. Zager and Webster both fired back at DeGross, who ran into the store.

As DeGross ran through the store again, he reloaded his pistol. Once out in front of the store, DeGross ran toward the highway; two officers, David Sugden and Nancy Wood, pursued. DeGross fired four shots at Sugden and two at Wood. A short time later, two other officers managed to stop DeGross. After a brief struggle, they subdued and arrested him.

## THE OFFENDER

DeGross was twenty-one years old when he committed these offenses. He had never previously been convicted of a felony but had one misdemeanor conviction for theft and possession of marijuana, for which he received ten days in jail with fifty additional days suspended, and one conviction for driving while intoxicated, resulting in a thirty-day sentence of which twenty-seven were suspended. DeGross' juvenile record consisted of a single delinquency adjudication for a second-degree burglary. The offense involved the breaking and entering of a store in a shopping mall four years previously. He was placed on juvenile probation and successfully completed his probationary term.

From information in the presentence report, it appears that DeGross enjoyed a fairly stable family background. His educational history is unremarkable. After experiencing minor problems with fighting and truancy, DeGross left high school briefly but eventually returned and graduated. Following graduation, DeGross remained employed fairly consistently in a variety of jobs.

DeGross has experienced a long-term problem with alcohol abuse. He was married in 1983 but separated as a result of

drinking and assaultive conduct toward his wife. By all accounts, DeGross also suffers from a problem with anger towards women. At one point, he apparently attended the Male Awareness Program in Anchorage to help deal with the anger issue.

By the time of his second sentencing hearing, DeGross had been incarcerated in connection with the current charges for more than four years. During that time, his institutional record was poor and included numerous disciplinary actions for minor infractions ranging from fighting with and threatening other inmates to possessing tattooing equipment. DeGross did not participate in any rehabilitation programs while incarcerated.

At the most recent sentencing hearing, the court was provided with four separate psychological evaluations—two submitted by DeGross and two by the state. While the examiners disagreed to a certain extent on precise diagnosis, preferred modality for treatment, and ultimate prospects for rehabilitation, they broadly concurred that DeGross displayed character traits indicative of an antisocial personality disorder, a problem exacerbated by his alcohol abuse.

The examiners further agreed that a diagnosis of antisocial personality disorder is typical of offenders who, like DeGross, are convicted of armed robbery and similar crimes of violence. Although the examiners generally concurred that antisocial personality disorders are difficult to treat and that the statistical success rate for treatment is relatively low, they emphasized that such a diagnosis is a poor predictor of future behavior in individual cases.

### THE SENTENCING

For the October 23, 1985, McDonalds robbery, DeGross was charged with one count of first-degree robbery and one count of assault in the second degree (for striking Odum with his pistol). A jury convicted DeGross of the robbery charge but acquitted him of the assault.

In connection with the Halloween robbery of Carrs, DeGross was charged with one count of first-degree robbery and two counts of attempted murder (for firing on Officers Sugden and Wood). DeGross entered a plea of no contest to the first-degree robbery but stood trial on the attempted murder charges. The jury acquitted him of attempted murder, as well as of the lesser-included offense of first-degree assault, but convicted on both counts for the lesser offense of third-degree assault.

DeGross' first-degree robbery convictions are class A felonies, for which the maximum term is twenty years' imprisonment per count. AS 11.41.500(b); AS 12.55.125(c). As a first felony offender who used a firearm in committing the offense, DeGross was subject to a presumptive term of seven years for each robbery. AS 12.55.125(c)(2). The third-degree assault convictions are class C felonies, for which the maximum term is five years. AS 11.41.220(b); AS 12.55.125(e). Because the assaults were committed against police officers, DeGross was subject to a one-year presumptive term on each count. AS 12.55.155(e)(3).

At the original sentencing hearing, Judge Carlson imposed maximum consecutive terms totaling fifty years in prison. On appeal, this court did not reach the issue of whether this sentence was excessive. Instead, we remanded for resentencing, finding the original sentencing remarks inadequate to allow meaningful appellate review. *DeGross*, 768 P.2d at 138. In remanding the case, we directed the sentencing court to make specific findings concerning the aggravating factors applicable to the various charges. *Id.* We also indicated that, before considering a composite sentence of more than ten years, the court should expressly allow DeGross an opportunity for a psychiatric evaluation. *Id.* at 142. We further stated that the sentencing court should decide on the total length of DeGross' sentence "only after appropriate consideration of cases involving other offenders convicted of like crimes." *Id.* at 141.

In connection with the latter aspect of our decision, we noted that a review of recent sentencing decisions involving

youthful first offenders convicted of multiple armed robberies indicated that a term of ten years or less was an appropriate benchmark. We specified that, "[i]n the event the sentencing court concludes that DeGross' total sentence should substantially exceed the benchmark sentences established by this court for similarly situated offenders, it should make express findings distinguishing this case." *Id.* Finally, we emphasized that the sentencing court would be justified in imposing a total sentence of more than twenty years (the maximum term for DeGross' most serious offense, first-degree robbery) only if it expressly found such a term to be "actually necessary for the protection of the community and that DeGross can neither be rehabilitated nor deterred by the imposition of a shorter sentence." *Id.* at 141–42.

On remand, Judge Carlson, after conducting an additional hearing, made specific findings concerning the various aggravating factors applicable to DeGross' charges.[1] DeGross argued for a total sentence of no more than ten years of unsuspended time. The state argued for a composite term of up to thirty years in prison. Judge Carlson disagreed with both recommendations. Finding DeGross to be a worst offender with no prospects for rehabilitation, Judge Carlson reimposed maximum sentences on all counts and again ordered them to run consecutively for a total of fifty years.

## DISCUSSION

On appeal, DeGross first contends that the sentencing court erred in determining the aggravating factors applicable to his case. DeGross further contends that the court gave undue weight to some factors and failed to adequately explain its reliance on others.

Having reviewed the record, we find substantial evidence to support the sentencing court's rulings; with but one exception,[2] we conclude that the court was not clearly erroneous in determining the aggravating factors applicable in this case. We further conclude that the sentencing court adequately explained the weight it accorded to the various factors, and we are not persuaded that the court gave any particular factor or combination of factors undue emphasis.

DeGross alternatively contends that the total sentence he received is excessive. He insists that the sentencing court erred in finding him to be a worst offender, that a term of fifty years is disproportionately high in comparison to other cases involving similarly situated offenders, and that the record does not support the conclusion that maximum consecutive sentences are actual-

1. The aggravating factors and the offenses to which Judge Carlson found them applicable are as follows:

    a. The defendant was previously adjudicated as a delinquent for conduct amounting to a felony (AS 12.55.155(c)(19))—found applicable to all counts.

    b. The defendant's conduct caused physical injury to a person other than an accomplice (AS 12.55.155(c)(1))—applicable to the two robbery charges only.

    c. The defendant's conduct manifested deliberate cruelty (AS 12.55.155(c)(2))—applicable to the two robbery counts only.

    d. The defendant was the leader of a group of three or more persons (AS 12.55.155(c)(3))—applicable to all offenses.

    e. The defendant's conduct created a risk of imminent physical injury to three or more persons (AS 12.55.155(c)(6))—applicable to robberies only.

    f. The defendant's conduct was knowingly directed at police officers (AS 12.55.-155(c)(13))—applicable to the Carrs robbery only.

    g. The defendant's conduct was among the most serious included in the definition of the offense (AS 12.55.155(c)(10))—applicable to the supermarket robbery and assault convictions only.

    h. The defendant knew that the offense involved more than one victim (AS 12.55.-155(c)(9))—applicable to the two robberies only.

2. The sentencing court found all of DeGross' offenses to be aggravated under AS 12.55.-155(c)(3) (the defendant was a leader of a group of three or more persons), even though the state gave notice of this aggravating factor only as to the two robbery charges and not as to the assaults. In our view, the court erred in finding this factor applicable to the assault charges without prior notice to DeGross. Given the nature and significance of the other aggravating factors found applicable to those charges, however, this error, in context, is plainly harmless.

ly necessary for the protection of the public.

■ We turn first to DeGross' contention that he should not have been characterized as a worst offender. DeGross argues that he was only twenty-one years old when he committed these offenses and had no prior felony convictions. A defendant can be found to be a worst offender, however, based not only on prior background, but also on the seriousness of the conduct involved in the case for which conviction has been entered. *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975).

In this case, even though DeGross is a youthful first offender, he stands convicted of two counts of robbery and two counts of assault; the crimes arise from two separate incidents. Each of DeGross' robberies was carefully planned. The robberies were perpetrated by at least three people, all heavily armed; DeGross was the leader of the group.

In each robbery, multiple victims were placed in imminent risk of serious physical injury; at least one victim received some physical injury in each case. Both robberies involved the taking or attempted taking of relatively large sums of cash.

DeGross perpetrated his offenses in a particularly violent manner. He used considerable gratuitous violence in each robbery, and threatened considerably greater violence. Of crucial significance is the violence DeGross and his companions used as they attempted to leave the scene of the Carrs robbery. DeGross, Hennessey, and Thiel willingly engaged in an open gun battle with police officers who were attempting to apprehend them. As a direct result, Hennessey was killed.

■ DeGross, heavily armed, personally fired shots at four different officers. He was convicted of third-degree assault for the shots he directed at two of the officers. The jury did acquit DeGross of attempted murder and first-degree assault, apparently finding a reasonable doubt as to whether he specifically intended to kill or seriously injure the officers. In determining the seriousness of DeGross' conduct for sentencing purposes, however, the court was not bound by the jury's acquittal but was entitled to rely on its own view of the facts. *See Brakes v. State,* 796 P.2d 1368, 1370–71 (Alaska App.1990); *Ridgely v. State,* 739 P.2d 1299, 1302 (Alaska App.1987); *Huckaby v. State,* 632 P.2d 975, 976 (Alaska App.1981). Judge Carlson made it clear that he interpreted the evidence less charitably than the jury. The judge expressly found that DeGross had fired at the officers with intent to kill or injure them. This factual finding was not clearly erroneous.

■ Under comparable circumstances, the Alaska Supreme Court has not hesitated to approve sentencing courts' worst-offender findings, even as to youthful offenders with relatively favorable criminal histories. *See, e.g., LaBarbera v. State,* 598 P.2d 947 (Alaska 1979); *Ferguson v. State,* 590 P.2d 43 (Alaska 1979); *Fox v. State,* 569 P.2d 1335 (Alaska 1977).[3] Considering

---

**3.** In arguing that he should not have been characterized as a worst offender, DeGross relies heavily on a number of other cases in which this court has considered sentences involving youthful first offenders convicted of multiple armed robberies. In our original decision in this case, we noted that these cases indicate that a total sentence of no more than ten years of unsuspended incarceration is an appropriate benchmark. *See DeGross,* 768 P.2d at 140 (citing *Hale v. State,* 764 P.2d 313 (Alaska App. 1988); *Townsel v. State,* 763 P.2d 1353 (Alaska App.1988); *Williams v. State,* 759 P.2d 575 (Alaska App.1988)). Relying on this ten-year benchmark, DeGross contends that the sentencing court's worst-offender finding is unjustified since classifying him as a worst offender would justify a sentence of at least twenty years—the maximum term for first-degree robbery, the

most serious offense for which DeGross was convicted. *See, e.g., Hancock v. State,* 741 P.2d 1210, 1214 n. 2 (Alaska App.1987).

The validity of the ten-year benchmark referred to in our earlier decision, however, has been called into question. *Compare State v. Wentz,* 805 P.2d 962 (Alaska 1991), with *Williams v. State,* 809 P.2d 931 (Alaska App. 1991), *modifying Williams v. State,* 800 P.2d 955 (Alaska App.1990). Even assuming that the ten-year benchmark remains valid, it would not be inconsistent with a worst-offender finding in DeGross' case. As was implicit in our original decision in this case, DeGross' overall conduct is exceptionally serious and, as such, plainly justifies departure from the benchmark indicated in other cases involving first offenders convicted of multiple armed robberies.

the totality of the circumstances, we find abundant evidence to support the sentencing court's conclusion that DeGross qualifies as a worst offender.

■ In and of itself, however, the sentencing court's worst-offender finding does not justify sentencing DeGross to a total of more than twenty years—the maximum sentence for first-degree robbery, the most serious offense for which DeGross was convicted. *See DeGross*, 768 P.2d at 140. As we made clear in our original opinion, maximum consecutive sentences totaling fifty years would not be proper absent a further express finding that such sentences are "actually necessary for the protection of the community and that DeGross can neither be rehabilitated nor deterred by the imposition of a shorter sentence." *Id.* at 141–42. While the sentencing court made such a finding, the record does not, in our view, support it.

In finding DeGross incorrigible and undeterrable, the sentencing court, on remand, relied most heavily on DeGross' psychological evaluations, which established that DeGross suffers from an antisocial personality disorder. Because persons who suffer from antisocial personality disorders are generally not readily amenable to rehabilitation, Judge Carlson reasoned that DeGross poses an ongoing danger from which the community must be protected on a continuing basis. Judge Carlson also pointed to the extreme violence DeGross exhibited in committing his current offenses, to his prior delinquency adjudication, to his problem with alcohol abuse, and to his poor institutional record.

Having thoroughly reviewed the sentencing record, we must conclude that the exceptionally strong reliance placed by the sentencing court on DeGross' character disorder is not justified. The record certainly supports a finding that DeGross suffers from an antisocial personality disorder. The record also supports a finding that persons similarly afflicted are on the whole relatively poor candidates for treatment and rehabilitation. These findings, however, cannot be deemed determinative.

While establishing that DeGross suffers from a personality disorder that does not readily lend itself to treatment, the expert testimony and evidence in this case also establishes that antisocial personality disorders are common, if not typical, among offenders who, like DeGross, have been convicted of armed robbery and similar offenses. Thus, standing alone, the fact that DeGross suffers from an antisocial personality disorder does not justify singling him out for a sentence drastically more severe than the presumptive sentence specified by the legislature or from that typically received by similarly situated offenders.

Moreover, undue reliance on the poor success rates usually experienced in treating persons with antisocial personalities is troubling. Rates of success in treatment address the issue of rehabilitation, not the issue of deterrence. We find little in the sentencing record suggesting that persons suffering from antisocial personality disorders cannot, as a whole, be deterred by a period of incarceration coupled with the threat of further incarceration.

Even more fundamentally, while statistical rates of success in rehabilitation may be helpful indicators of general potential for rehabilitation or the lack thereof, they do not speak to the individual case or establish whether a particular offender actually can be rehabilitated. In fact, the expert testimony and evidence in the present case establishes, without contradiction, that the diagnosis of an antisocial personality disorder is in itself an unreliable and inaccurate predictor of future behavior in any given case. Virtually all the expert witnesses concurred that the most accurate, if not the only accurate, gauge of future danger is an offender's history of prior misconduct.

Here, despite the seriousness of the conduct involved in the current offenses, the fact remains that DeGross is a youthful offender who has no history of prior similar misconduct and who has never before demonstrated a proclivity toward comparable acts of aggravated violence. DeGross' criminal history consists of a single delinquency adjudication for a property offense—for which DeGross successfully

completed a period of juvenile probation—and two adult misdemeanor convictions, for which DeGross served a total of thirteen days in jail.

DeGross' more recent institutional record, while far from exemplary, consists of infractions for fighting and other less serious misbehavior. Furthermore, although DeGross has not displayed any particular interest in participating in rehabilitation while incarcerated, neither has he established a history of failure in rehabilitation.

DeGross' psychological makeup, his prior delinquency and misdemeanor convictions, and his poor institutional record are not insignificant considerations for sentencing purposes. These factors, combined with the highly serious misconduct in his current offenses, afford little affirmative basis for optimism concerning DeGross' prospects for rehabilitation. Considering the record as a whole, a sentence geared toward deterrence, community condemnation, and isolation is certainly appropriate, and emphasis on the goal of rehabilitation seems unjustified.

Beyond this, however, we find no concrete basis to support the sentencing court's hard and fast conclusion that DeGross is wholly incorrigible—that he is utterly incapable of being rehabilitated or deterred and that the only recourse is to isolate him from the public for as long as possible. We conclude that the superior court's decision to base DeGross' sentence on the assumption that he is incorrigible was unjustified.

Our conclusion is fortified by a comparison of DeGross' case to prior similar cases. In our original decision remanding this case for resentencing, we directed the superior court to decide upon a composite sentence "only after appropriate consideration of cases involving other offenders convicted of like crimes." *DeGross,* 768 P.2d at 141. Our directive was motivated by considerations of uniformity. *See* AS 12.55.005(1). The only allusion to other cases contained in the superior court's sentencing remarks on remand consisted of cursory references to *Schuenemann v. State,* 781 P.2d 1005 (Alaska App.1989), and *Contreras v. State,* 767 P.2d 1169 (Alaska App.1989)—recent decisions in which this court approved extremely lengthy consecutive sentences calculated to assure that the defendant remained "under correctional supervision for the remainder of his life." *Schuenemann,* 781 P.2d at 1009.

DeGross' case is readily distinguishable from *Schuenemann, Contreras,* and other cases in the same category.[4] All cases in this category involve offenders who were actually convicted of more serious classes of crimes than DeGross, and who also had "past proven criminal record[s]," *Contreras,* 767 P.2d at 1175—that is, offenders whose criminal histories had "establish[ed] an ingrained, compulsive criminal pattern." *Schuenemann,* 781 P.2d at 1009. In contrast, the sentencing record in the current case cannot support the conclusion that DeGross is a habitual offender. *See, e.g., Benefield v. State,* 559 P.2d 91, 98 (Alaska 1977).

Our review of prior sentencing decisions involving generally similar offenses has not revealed any case that even begins to approach the total fifty-year term imposed here. Indeed, barring instances in which the defendant was simultaneously convicted of murder or some comparable unclassified felony, we are aware of no decision of this court or the Alaska Supreme Court approving a composite sentence of more than twenty years in an armed robbery case, even when the case involved multiple convictions or intentional shootings.[5]

**4.** *See, e.g., Newcomb v. State,* 800 P.2d 935 (Alaska App.1990); *Murray v. State,* 770 P.2d 1131 (Alaska App.1989); *Wortham v. State,* 689 P.2d 1133 (Alaska App.1984).

**5.** *See, e.g., Dunn v. State,* 653 P.2d 1071 (Alaska App.1982); *Wightman v. State,* 606 P.2d 797 (Alaska 1980); *Ferguson v. State,* 590 P.2d 43 (Alaska 1979); *Ferguson v. State,* 606 P.2d 382

(Alaska 1980); *Putnam v. State,* 600 P.2d 1096 (Alaska 1979); *Walls v. State,* 598 P.2d 949 (Alaska 1979); *LaBarbera v. State,* 598 P.2d 947 (Alaska 1979); *Good v. State,* 590 P.2d 420 (Alaska 1979); *Collins v. State,* 574 P.2d 1278 (Alaska 1978); *Creed v. State,* 573 P.2d 1379 (Alaska 1978); *Fox v. State,* 569 P.2d 1335 (Alaska 1977); *Cleary v. State,* 548 P.2d 952 (Alaska 1976), on remand, 564 P.2d 374 (Alaska 1977); *Davenport*

The case law thus strongly suggests the appropriateness of a composite sentence in this case totaling no more than twenty years of unsuspended time. We recognize, however, the limitations of relying too heavily on prior sentencing cases. Most cases involving offenses comparably serious to DeGross' were decided under Alaska's former robbery statute, which provided for a maximum term of fifteen years, rather than twenty years. *See* former AS 11.15.240. Moreover, DeGross' case distinguishes itself from prior cases by its extreme violence—violence that included attempts to shoot numerous police officers and that resulted in the shooting death of one of DeGross' companions.

Given these considerations, and having independently reviewed the entire sentencing record, we conclude that a composite sentence of thirty years of unsuspended imprisonment would be justified, despite DeGross' status as a youthful first offender. *See, e.g., Ferguson v. State*, 606 P.2d at 385 (Burke, J., dissenting); *Cleary v. State*, 548 P.2d at 957–58 (Burke, J., dissenting). *See also Hintz v. State*, 627 P.2d 207 (Alaska 1981); *Patterson v. State*, 689 P.2d 146 (Alaska App.1984); *Tookak v. State*, 648 P.2d 1018 (Alaska App.1982). In our view, however, a longer total sentence would not be justified, and the total sentence of fifty years actually imposed below is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is REVERSED, and this case is REMANDED for resentencing in conformity herewith.

COATS and MANNHEIMER, JJ., not participating.

*v. State*, 543 P.2d 1204 (Alaska 1975), on remand, 564 P.2d 69 (Alaska 1977); *Bragg v. State*,

560 P.2d 391 (Alaska 1977); *Benefield v. State*, 559 P.2d 91 (Alaska 1977).